Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| APS HEALTHCARE PUERTO RICO; PLAN DE SALUD MENONITA; FIRST MEDICAL HEALTH PLAN; TRIPLE S HEALTH PLAN<br><br>Recurrente<br><br>v.<br><br>FIRST HOSPITAL PANAMERICANO<br><br>Recurrida | TA2025RA00138 | *Revisión Decisión Administrativa* procedente de la Oficina de Ética Gubernamental<br><br>Caso núm.: 24-PV-09-822<br><br>Sobre:<br>Tarifas |

Panel integrado por su presidente, la Juez Rivera Marchand, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.[1]

Robles Adorno, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de octubre de 2025.

El 8 de agosto de 2025, APS Healthcare Puerto Rico, Plan de Salud Menonita, First Medical Health Plan y Triple S Health Plan (en conjunto, la parte recurrente) presentó ante nos un recurso de *Revisión Judicial* en el que solicitó que revoquemos la *Resolución* emitida el 30 de mayo de 2025, notificada el 4 de junio de 2025, por la Administración de Seguros de Salud de Puerto Rico (ASES).

En el aludido dictamen, ASES resolvió que, procedía concederle el aumento de cinco (5) por ciento solicitado por First Hospital Panamericano (FHP o parte recurrida) en las tarifas de los servicios médicos que proveyó a los beneficiarios del Plan Vital, el cual está compuesto por la parte recurrente.[2]

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

---

[1] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución del Juez Rodríguez Flores.
[2] Apéndice del Recurso de Revisión Judicial, Anejo 2.

**I.**

El caso de epígrafe tuvo su inicio cuando el 12 de julio de 2025, FHP instó una *Querella* en un documento titulado *Request for Administrative Hearing* en el que alegó que el 6 de abril de 2022, mediante la Carta Circular 2022-0406, ASES informó que, las aseguradoras que componen el Plan Vital debían aumentar las tarifas de los servicios hospitalarios a un cinco (5) por ciento.[3] En la misiva indicaba que, dicho aumento entraba en vigor a partir del 1 de octubre de 2021 de manera retroactiva. De igual forma, señaló que, el 17 de junio de 2022, ASES emitió una Carta Normativa 22-0617, en la que clarificó que el cinco (5) por ciento era aplicable a los pacientes de salud mental internados en algún hospital psiquiátrico o pacientes que no estén internados en el hospital, pero reciben servicios de salud mental.

Ante este cuadro, FHP argumentó que no había recibido el pago de las tarifas por los servicios de salud mental con el porcentaje aprobado por ASES por parte de las aseguradoras que componen el Plan Vital. Por ende, solicitó que el organismo administrativo celebrara una vista administrativa en aras de que ordene a la parte recurrente cumplir con aplicar el porcentaje aprobado.

Así las cosas, el 8 de octubre de 2024, First Medical Health Plan, Inc., radicó una *Contestación a la Querella* en la que negó las alegaciones de la parte recurrida.[4] Asimismo, afirmó que ha estado en cumplimiento con las directrices de ASES. Particularmente, con la normativa vigente en la Carta Circular 2022-0406 y la Carta Normativa 22-0617. Por tanto, solicitó que ASES desestimara la causa de acción instada en su contra toda vez que ha cumplido con normativa de la Carta Circular 2022-0406 y la Carta Normativa 22-0617.

---

[3] *Íd.*, Anejo 1.
[4] *Íd.*, Anejo 3.

En igual fecha, APS Healthcare, Inc., presentó una *Contestación a querella* en la que sostuvo que, previo al 1 de octubre de 2021, no existía un contrato suscrito entre FHP y APS Healthcare, Inc.[5] Consecuentemente, argumentó que la Carta Circular 2022-0406 y la Carta Normativa 22-0617 no le era de aplicación puesto que, para el 1 de octubre de 2021, no había un contrato suscrito entre APS Healthcare Inc., y FHP.

Tras diversos incidentes procesales, el 18 de octubre de 2024, el Plan de Salud Menonita, Inc., (PSM) instó una *Moción en torno a contestación a querella del plan de salud menonita* en la que aclaró que el 7 de octubre de 2024, presentó su *Contestación a querella.*[6] Asimismo, el 8 de octubre de 2024, ASES confirmó que recibió dicha contestación.

Tiempo después, el 27 de noviembre de 2024, la parte recurrente radicó una *Moción en cumplimiento de orden* en la que informó que el caso debería resolverse por el expediente.[7]

Ese mismo día, ASES emitió una *Orden* en la que le concedió diez (10) días a FHP para presentar su postura en cuanto a la petición de la parte recurrente.[8]

El 4 de diciembre de 2024, ASES remitió una *Orden* en la que determinó que no tenía inconveniente en resolver el caso mediante expediente.[9]

Tras diversas prórrogas, el 17 de enero de 2025, la parte recurrida presentó un *Alegato de la parte querellante* en la que argumentó que, a través de la Carta Circular 2022-0406 y la Carta Normativa 22-0617, ASES aprobó un aumento de cinco (5) por ciento en las tarifas médicas para los proveedores en servicios de

---

[5] *Íd.*, Anejo 4.
[6] *Íd.*, Anejo 5.
[7] *Íd.*, Anejo 11.
[8] *Íd.*, Anejo 12.
[9] *Íd.*, Anejo 13.

salud mental, como lo es FHP.[10] En esa línea, argumentó que no se podían disminuir las tarifas acordadas con los proveedores bajo el Plan Vital, sin excepción alguna. Asimismo, adujo que las enmiendas aprobadas por la Junta de Supervisión Fiscal en los contratos de ASES con los proveedores del Plan Vital no dispusieron alguna limitación en cuanto al aumento del cinco (5) por ciento. A su vez, arguyó que la ley orgánica de ASES obligaba a las aseguradoras a pagarle a los proveedores, como lo era FHP. Consecuentemente, solicitó que, ASES ordenara a la parte recurrente que cumpliese con el pago adeudado tras incumplir con pagarle a FHP las tarifas de servicios médicos en las que se debió reflejar el aumento aprobado.

El 20 de febrero de 2025, la parte recurrente instó un *Alegato de las querelladas* en la que reclamó que no procedía pagarle a FHP el aumento de tarifa en controversia puesto que no tenía un contrato con el Plan Vital.[11] En esa línea, arguyó que en el contrato que pactó con FHP ambas partes acordaron que, la parte recurrida tendría en sus tarifas un porcentaje mayor en comparación al porcentaje en cuestión. Además, la parte recurrente alegó que carecía de fondos federales para pagar el incremento solicitado en las tarifas de servicios. Por tanto, alegó que FHP iba a obtener doble indemnización con relación a los servicios que ofrecía.

El 9 de mayo de 2025, ASES, sin someterse a la jurisdicción, presentó una *Moción en cumplimiento de orden* en la que aclaró que la Carta Circular 2022-0406 y la Carta Normativa 22-0617 detallan la implementación del aumento de un cinco (5) por ciento en las tarifas de los servicios provistos por los hospitales participantes del Plan Vital.[12] Al respecto, mencionó que, dicho aumento debía ser aplicado a toda facilidad hospitalaria que haya brindado atención

---

[10] *Íd.*, Anejo 17.
[11] *Íd.*, Anejo 20.
[12] *Íd.*, Anejo 26.

médica dentro del periodo establecido en la Carta Circular 2022-0406 y la Carta Normativa 22-0617, sin alterar las tarifas previamente acordadas entre ASES y las aseguradoras. Ahora bien, la ASES enfatizó que, su comparecencia se limitó a fines de interpretar la Carta Circular 2022-0406 y la Carta Normativa 22-0617 en el caso de autos.

Luego de diversas mociones presentadas por las partes, el 2 de junio de 2025, ASES emitió una *Orden* en la que sometió el caso.[13]

Así pues, el 30 de mayo de 2025, notificada el 4 de junio de 2025, la ASES remitió una *Resolución* en la que informó que acogió el *Informe y Recomendación* del Oficial Examinador y, por tanto, declaró Ha Lugar la *Querella* instada por FHP.[14] Con ello, ASES determinó que la Carta Circular 2022-0406 y la Carta Normativa 22-0617, no condicionaban la aplicación del aumento del cinco (5) por ciento a factores contractuales entre las partes. Asimismo, resolvió que, el porcentaje aprobado no mitigaba otros acuerdos que no estaban relacionados con las tarifas ajustadas e impuestas por ASES con la anuencia de la Junta de Supervisión Fiscal. En fin, ASES aclaró que las aseguradoras no podían entorpecer el incremento del cinco (5) por ciento en las tarifas de servicios brindados por FHP.

El 24 de junio de 2025, la parte recurrente instó una *Moción de reconsideración* en la que argumentó que la *Resolución* carece de contener una parte dispositiva dado que ASES no le indicó a la parte recurrente sus deberes frente a FHP.[15] Recalcó que, FHP iba a recibir una cantidad mayor al porcentaje aprobado y, por tanto, incumplía con los fondos destinados para el pago de los servicios que recibían los beneficiarios. Resaltó que, ASES debió realizar estudios

---

[13] *Íd.*, Anejo 32.
[14] *Íd.*, Anejo 2.
[15] *Íd.*, Anejo 34.

actuariales para identificar los fondos que podían ser destinados para el pago de las tarifas de servicios médicos. Consecuentemente, alegó que ASES no podía aprobar aumentos tarifarios sin fondos reconocidos para su desembolso y, por tanto, solicitó una vista argumentativa para atender dicha controversia.

El 8 de julio de 2025, FHP radicó *Oposición a moción de reconsideración y en solicitud de vista* en la que sostuvo que, la *Resolución* emitida por ASES le dio finalidad a la controversia.[16] Insistió en que, la Carta Circular 2022-0406 y la Carta Normativa 22-0617 no disponía limitaciones al pago del porcentaje aprobado. Ello, en virtud de que la intención de las cartas previamente mencionadas esbozaba que las aseguradoras no podían disminuir las tarifas acordadas con los proveedores bajo el Plan Vital. Por otro lado, alegó que la parte recurrente incluyó en la *Moción de reconsideración* argumentos adicionales que no fueron anteriormente contemplados, como lo era la falta de fondos para desembolsar el pago del porcentaje en controversia. Por tanto, solicitó que ASES no concediera la reconsideración solicitada.

El 15 de julio de 2025, notificada el 16 de julio de 2025, ASES ratificó declarar Ha Lugar la *Querella* instada por FHP.[17] En esa línea, ASES ordenó a la parte recurrente a cumplir con el pago del cinco (5) por ciento en las tarifas por servicios de salud mental.

Inconforme, el 8 de agosto de 2025, la parte recurrente presentó un recurso de Revisión Judicial ante nos en el que formuló un señalamiento de error:

> Erró ASES a acoger el informe y recomendación del Oficial Examinador declarando Ha Lugar la Querella y ordenando a las aseguradoras dar un segundo aumento tarifario a FHP, sin la debida asignación de fondos y en violación a la Ley Federal de Medicaid.

---

[16] *Íd.*, Anejo 35.
[17] *Íd.*, Anejo 36.

En atención a nuestra *Resolución,* el 8 de septiembre de 2025, FHP radicó una *Oposición a recurso de revisión judicial.*

En igual fecha, ASES instó, sin someterse a la jurisdicción, *Escrito en contestación a revisión judicial.*

Con el beneficio de la comparecencia de las partes, procederemos a resolver el caso ante nuestra consideración.

**II.**

**A.**

Los organismos administrativos merecen la mayor deferencia posible de los tribunales. *Otero* v. *Toyota,* 163 DPR 716, 727 (2005). Tal deferencia se apoya en que las agencias administrativas tienen conocimiento experto y la experiencia especializada de los asuntos que le son encomendados. *Otero* v. *Toyota, supra,* pág. 728. Un principio establecido es que las determinaciones de las agencias administrativas tienen una presunción de legalidad y corrección en la que no deben intervenir los tribunales. *Rebollo* v. *Yiyi Motors,* 161 DPR 69, 78 (2004). Las determinaciones de hecho de las agencias tienen a su favor una "presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas." *Henríquez v. Consejo Educación Superior,* 120 DPR 194, 210 (1987). Nuestro Tribunal Supremo ha expresado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero Mercado v. Toyota de P.R. Corp.,* 163 DPR 716, 727-728 (2005); *Domingo v. Caguas Expressway Motors,* 148 DPR 387, 397 (1999). Las determinaciones de hecho serán sostenidas por el tribunal, si se basan en evidencia sustancial que no obra en el expediente administrativo. *Vázquez v. Consejo de Titulares,* 216 DPR ___ (2025), 2025 TSPR 56. Ejercitando un criterio de razonabilidad

y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hecho realizadas por una agencia si están sostenidas por evidencia sustancial que surge del expediente. *Otero* v. *Toyota, supra,* pág. 728. El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra,* pág. 728; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra,* pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra,* pág. 728. La parte que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] hasta el punto de que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. *Metropolitan S.E. v. A.R.P.E.*, 138 DPR 200, 213 (1995) citando a *Hilton Hotels v. Junta de Salario Mínimo,* 74 DPR 670, 686 (1983).

El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra,* pág. 728; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en

evidencia sustancial. *Otero v. Toyota, supra,* pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra,* pág. 728.

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Las conclusiones de derecho serán revisables en todos sus aspectos por un tribunal. *Vázquez v. Consejo de Titulares, supra.* La interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. *Vázquez v. Consejo de Titulares, supra.* Ello, como mecanismo interpretativo del poder judicial. *Íd.* Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia". *Otero v. Toyota,* supra, pág. 729. Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.* Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa". *Íd.*

No obstante, la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial; (2) cuando el

organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *Otero* v. *Toyota,* 163 DPR 716, 730 (2005). Al ejercer la función revisora, el tribunal está obligado a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuvo ante sí. *Rebollo* v. *Yiyi Motors,* 161 DPR 69, 78 (2004). Por otro lado, las determinaciones de derecho, el tribunal tiene amplia autonomía para revisarlas en todos sus aspectos. *Rebollo* v. *Yiyi Motors, supra,* pág. 77.

**B.**

Las agencias administrativas gozan de poder cuasilegislativo para aprobar reglas y reglamentos. *Sierra Club v. Junta de Planificación,* 203 DPR 596, 605 (2019). Con ello, los organismos administrativos pueden formular reglas no legislativas y reglas legislativas. *Sierra Club v. Junta de Planificación, supra,* pág. 606. Las reglas no legislativas "constituyen pronunciamientos administrativos que no alteran los derechos ni las obligaciones de los individuos". *Sierra Club v. Junta de Planificación, supra,* pág. 606, citando a: *Mun. de Toa Baja v. DRNA,* 185 DPR 684, 696 (2012). De igual manera, una regla no legislativa constituye un pronunciamiento administrativo que no afecta los derechos ni obligaciones de los individuos. *R&B Power, Inc. v. Junta de Subastas de la Administración de Servicios Generales,* 213 DPR 685, 702-703 (2024). Así pues, la LPAU dispensa del procedimiento formal de la reglamentación en esos casos.

Por otro lado, una regla legislativa "crea derechos, impone obligaciones y establece un patrón de conducta que tiene fuerza de ley". *Mun. de San Juan v. JCA,* 152 DPR 673, 692 (2000). En consecuencia, para aprobar una regla debe de cumplir con varios

requisitos y de estricto cumplimiento. *Mun. de Toa Baja v. DRNA,* 185 DPR 684, 695 (2012). El cumplimiento con el proceso es indispensable para "poder reconocerle fuerza de ley a la regla promulgada, ya que ello forma parte de las garantías procesales que permean todo el estatuto". *Centro Unido Detallistas v. Com. Serv. Púb.,* 174 DPR 174, 183 (2008). Todo procedimiento de reglamentación debe cumplir con los siguientes requisitos: (1) notificar al público la reglamentación que se aprobará; (2) proveer oportunidad para la participación ciudadana, que incluya vistas públicas cuando sea necesario u obligatorio; (3) presentar la reglamentación ante el Departamento de Estado para la aprobación correspondiente, y (4) publicar la reglamentación aprobada. Secciones. 2.1,2.2,2.3,2.8 y 2.11 de la *Ley de Procedimiento Administrativo,* Ley Núm. 38 de 30 de junio de 2017 (LPAU), según enmendada, 3 LPRA secs. 9611-9613, 9618 y 9621.

Ante ello, la Sección 1.3 (m) de la LPAU, *supra* sec. 9603, define regla o reglamento como:

> Significa cualquier norma o conjunto de normas de una agencia que sea de aplicación general que ejecute o interprete la política pública o la ley, o que regule los requisitos de los procedimientos o prácticas de una agencia que tenga fuerza de ley. El término incluye la enmienda, revocación o suspensión de una regla existente. Quedan excluidos de esta definición:
> (1) Reglas relacionadas con la administración interna de la agencia o comunicaciones internas o entre agencias que no afectan los derechos o los procedimientos o prácticas disponibles para el público en general.
> (2) Documentos guía según definidos en esta Ley.
> (3) Órdenes de precios del Departamento de Asuntos del Consumidor y otros decretos u órdenes similares que se emitan o puedan emitir en el futuro por otras agencias, y que meramente realizan una determinación de uno o varios parámetros de reglamentación con base a un reglamento previamente aprobado y que contiene las normas para su expedición.
> (4) Formas y sus instrucciones, siempre que no constituyan documentos guía.

Ahora bien, en *Sierra Club v. Junta de Planificación, supra,* pág. 606. Señalamos que, en *R&B Power, Inc. v. Junta de Subastas de la Administración de Servicios Generales, supra,* págs. 713-714,

el Tribunal Supremo resolvió que una Carta Circular se sitúa dentro de la definición de un documento guía y, por tanto, carece de tener fuerza de ley. Consecuentemente, "una carta circular es una regla no legislativa ya que no tiene la fuerza de ley que se le atribuye a los reglamentos". *R&B Power, Inc. v. Junta de Subastas de la Administración de Servicios Generales*, *supra*, págs. 714, citando a: *González Segarra et al. v. CFSE*, 188 DPR 252, 298 (2013). Es decir, una Carta Circular es un documento guía que expresa "la interpretación de la agencia sobre alguna legislación, la política pública de la agencia o que describe cómo y cuándo la agencia ejercerá sus funciones discrecionales. Incluye interpretaciones oficiales, según definidas en esta Ley". Sección 1.3 (c) de la LPAU *supra* sec. 9603.

### C.

La *Ley de la Administración de Seguros de Salud de Puerto Rico (ASES)*, Ley Núm. 72 de 7 de septiembre de 1993 (Ley Núm. 72-1993), según enmendada, 24 LPRA sec. 7002, *et. seq*, tiene como fin implantar, administrar y negociar mediante contratos con aseguradoras u organizaciones de servicios de salud brindarle un sistema de seguros de salud a los ciudadanos de Puerto Rico. A esos efectos, en la Exposición de Motivos del citado estatuto estatuye que, ASES tiene el deber de establecer mecanismos de control dirigidos a evitar un alza injustificada en los costos de servicios de salud y primas de los seguros. Como parte de sus funciones, ASES tiene la obligación de negociar y contratar con aseguradoras públicas y privadas y organizaciones de servicios de salud, cubiertas de seguros médico-hospitalarios, según se definen y establecen éstos en el Artículo VI de esta ley (24 LPRA sec. 7025 a 7036). Con ello, la Sección 2 (m) de ASES, *supra* sec. 7004, estatuye que ASES tiene la facultad para realizar los actos necesarios y convenientes para llevar a cabo los propósitos de la citada ley. Cónsono con lo anterior, ASES

tiene potestad para establecer contratos con las aseguradoras o proveedores participantes y organizaciones de servicios de salud para,

> (1) La garantía del pago y la atención médico-hospitalaria que reciban sus beneficiarios, aunque la misma se preste fuera del área de salud donde los beneficiarios residan, por razón de emergencia o necesidad imperiosa.
> (2) Los mecanismos de evaluación y de cualquier otra naturaleza que garanticen todos los aspectos que afecten, directa o indirectamente, la accesibilidad, calidad, control de costos y de utilización de los servicios, así como la protección de los derechos de los beneficiarios y proveedores participantes.
> (3) La actuación como pagador secundario del seguro médico contratado por la Administración, en caso de que la persona elegible a recibir servicios tenga otro seguro médico.
> (4) La prohibición de que un proveedor de servicios reclame directamente al paciente el balance que la compañía aseguradora no desembolsó por los servicios prestados en salas de emergencia, que como paciente no está obligado a pagar. La aseguradora está obligada a pagar el 100% (cien por ciento) de lo estipulado en el contrato. Esto no incluye deducible.

*Íd.*, *supra* sec. 2004

En cumplimiento con sus deberes, el 6 de abril de 2022, ASES publicó una Carta Circular 2022-0406, en la que esbozó que el 24 de marzo de 2022, la Junta de Control Fiscal aprobó unas enmiendas en el contrato suscrito entre ASES y las organizaciones de manejo de cuidado en el que acordaron que dichas organizaciones iban a recibir un aumento de un cinco por ciento (5%) en las tarifas por los tratamientos que les ofrezcan a pacientes que reciban servicios médicos provistos por el hospital. Ello, en aras de fomentar el cumplimiento de la política pública de ASES para que las personas que se benefician del Plan Vital puedan obtener los servicios de salud mental.

Luego, el 17 de junio de 2022, en la Carta Normativa 22-0617, ASES aclaró que el porcentaje aprobado debe aplicarse a los hospitales que proveyeron servicios hospitalarios a beneficiarios del Plan Vital. A tenor con lo anterior, los balances relacionados al

porcentaje del cinco por ciento (5%) en las tarifas de servicios deben ser pagados retroactivamente a los hospitales que suscribieron un contrato con el Plan Vital a partir del 1 de octubre de 2021. Así pues, el porcentaje en cuestión es aplicable a todo servicio brindado por un hospital a pacientes de salud mental. En dicha misiva, ASES señaló que otros aspectos contractuales con las aseguradoras no pueden afectar el porcentaje aprobado por ASES y, por tanto, debe concederse el mismo.

**III.**

En el caso de autos, la parte recurrente alegó que ASES erró en acoger el *Informe y Recomendación* del Oficial Examinador tras mediante una *Resolución* declarar Ha Lugar la *Querella* instada en su contra por parte de FHP. A su vez, adujo que no procede que cumpla con el pago del porcentaje aprobado por ASES en la Carta Circular 2022-0406.

Conforme las normas jurídicas pormenorizadas, es sabido que debemos brindarles deferencia a las determinaciones de hecho y análisis de las agencias administrativas. Ello, en virtud de que los entes administrativos tienen la pericia y el conocimiento experto del cual carecemos. Sin embargo, en limitadas circunstancias estamos autorizados para intervenir en las determinaciones de las agencias, las cuales son: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *Otero* v. *Toyota, supra.* Por tanto, esta Curia debe considerar la experiencia y especialización que tiene una agencia administrativa al evaluar la prueba que tuvo ante su consideración.

No obstante, estamos autorizados a revisar las conclusiones de derecho que pronuncie una agencia en su totalidad.

A tenor con estos principios, y en atención a nuestra controversia, reconocemos que los organismos administrativos tienen funciones cuasilegislativas. Con ello, un ente administrativo tiene la potestad de emitir reglas que carezcan de fuerza de ley y no afecten los derechos y obligaciones de las personas. A esos fines, una agencia administrativa tiene potestad para enunciar mediante una Carta Circular su interpretación sobre una legislación, política pública o informar como la agencia ejercerá sus facultades discrecionales.

Tras un análisis riguroso del expediente, resolvemos que ASES no erró en ordenar a las aseguradoras el pago del porcentaje que dicho organismo administrativo aprobó.

En primer lugar, resolvemos que ASES actuó dentro de las facultades delegadas. Ello, pues ASES tiene la potestad de contratar aseguradoras para que brinden servicios a los ciudadanos de Puerto Rico. Dentro de sus facultades, ASES ostenta el poder de negociar contratos y tarifas con las aseguradoras en aras de continuar ofreciendo servicios de salud a los residentes de Puerto Rico. A esos efectos, en la Carta Circular 2022-0406, ASES determinó que, las aseguradoras del Plan Vital que suscribieron un contrato a partir del 1 de octubre de 2021 debían aumentar un cinco (5) por ciento de las tarifas de servicios que proveen los hospitales del Plan Vital que brinden atención médica a los pacientes de salud mental, entre ellos FHP. Dicho aumento fue porque se estaban afectando los servicios médicos que se le estaban proporcionando a los pacientes del Plan Vital. En esa línea, en la Carta Normativa 22-0617, ASES delineó los parámetros para los hospitales que se podían beneficiar del porcentaje en cuestión. Como vemos, ASES aplicó los poderes que le han sido delegados y su pericia para entender que procedía

el aumento en controversia. Consecuentemente, resolvemos que ASES no se excedió de sus funciones toda vez que actuó dentro de las facultades delegadas en su ley orgánica para que los beneficiarios del Plan Vital continuaran recibiendo los servicios médicos necesarios.

En segundo lugar, la parte recurrente no trajo a nuestra atención el contrato suscrito entre FHP y esta, para que esta Curia pudiera evaluar propiamente ciertos planteamientos esbozados por la parte recurrente en el recurso ante nuestra consideración. Al respecto, examinamos rigurosamente la *Resolución* y notamos que fueron incluidos fragmentos del contrato suscrito entre ASES y FHP. Así pues, denotamos que en el inciso 11.38 del contrato suscrito entre ASES y FHP, sobre los beneficiarios del Plan Vital, indica que, las tarifas acordadas con ASES pueden ser ajustadas. A esos fines, la parte recurrente tenía pleno conocimiento sobre la posibilidad de que hubiera cambios en los pagos de las tarifas médicas. Inclusive, surge del expediente que dicho aumento fue aprobado con la anuencia y consentimiento de la Junta de Supervisión Fiscal. Ciertamente, la parte recurrente no esbozó argumentos ante este Tribunal de Apelaciones que nos persuadiera a determinar contrario a ASES. Además, la parte recurrente no instó ante nos evidencia que rebatiera la pericia de la agencia tras razonar que procedía el aumento aprobado. Consecuentemente, no intervendremos en la *Resolución* emitida por ASES debido a que no se configuraron las excepciones que nos permiten intervenir.

Por los fundamentos pormenorizados y ante la ausencia de las circunstancias que nos autorizan a intervenir en la pericia de ASES, confirmamos la *Resolución* recurrida.

**IV.**

Por los fundamentos que anteceden, confirmamos la *Resolución* recurrida.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La jueza Rivera Marchand concurre sin opinión escrita.


                                        Lcda. Lilia M. Oquendo Solís
                                   Secretaria del Tribunal de Apelaciones